UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

LAWRENCE E. McNALLY,            )
                                )
            Plaintiff,          )    Case No. 1:04-cv-696
                                )
v.                              )    Honorable Joseph G. Scoville
                                )
COMMISSIONER OF                 )
SOCIAL SECURITY,                )
                                )    **MEMORANDUM OPINION**
            Defendant.          )
_____)

       This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. Plaintiff filed the applications giving rise to this appeal on February 1, 2002. (A.R. 46-48, 309-12). He asserted a June 1, 1999 onset of disability, but later amended the alleged onset date to July 2, 2000. (A.R. 333).[1] Plaintiff's claims were denied upon initial review, and as a disability redesign prototype case, were not subject to administrative review at the reconsideration stage. (A.R. 25, 313). On August 1, 2003, plaintiff received a hearing before an administrative law judge (ALJ) at which plaintiff was

---

[1] SSI benefits are not awarded retroactively for months prior to the application. 20 C.F.R. § 416.335; *see Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); *Torres v. Chater*, 125 F.3d 166, 171 n.1 (3d Cir. 1997); *Kepler v. Chater*, 68 F.3d 387, 389 (10th Cir. 1995); *see also Romero v. Barnhart*, 135 F. App'x 172, 174 (10th Cir. 2005); *Newson v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). Therefore, the question before the Commissioner on plaintiff's SSI claim was whether plaintiff was disabled in or after February 2002, not plaintiff's amended onset date of July 2, 2000.

represented by counsel. (A.R. 330–64). On October 27, 2003, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 14-21). The Appeals Council denied review on September 13, 2004 (A.R. 4-6), and the ALJ's decision became the Commissioner's final decision. Plaintiff filed a timely complaint in this court seeking review of the Commissioner's decision denying his DIB and SSI claims. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States Magistrate Judge conduct all further proceedings in this case, including entry of final judgment. (docket # 10). The issues raised by plaintiff are as follows:

1. THE ADMINISTRATIVE LAW JUDGE FAILED TO CONSIDER THE IMPACT OF STRESS UPON THE PLAINTIFF'S ABILITY TO SUSTAIN EMPLOYMENT AS EXPLAINED IN SSR 85-15 AND FAILED TO CONSIDER SSR 96-9p.[2]

2. THE ADMINISTRATIVE LAW JUDGE'S HYPOTHETICAL QUESTION THAT WAS POSED TO THE VOCATIONAL EXPERT THAT RESULTED IN OCCUPATIONS OF ASSEMBLY, NIGHT CUSTODIAN AND LINE ATTENDANT, DID NOT ACCURATELY DESCRIBE PLAINTIFF'S ABILITIES AND LIMITATIONS.

(Plf. Brief at 1, Statement of Issues, docket # 7). Upon review, the court finds that plaintiff's arguments do not provide any basis for disturbing the Commissioner's decision, and the Commissioner's decision will be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124,

---

[2] The first two issues listed in plaintiff's Statement of Issues (docket # 7 at 1) are identical. The redundant issue has been disregarded.

125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act on July 2, 2000, his alleged onset of disability, and continued to meet them through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity since July 2, 2000. The ALJ found that the medical evidence established that plaintiff had severe impairments of an anxiety disorder, depressive disorder, post-traumatic stress disorder, and an obsessive compulsive disorder. (A.R. 17). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. The ALJ determined that plaintiff's subjective complaints were not fully credible and that plaintiff retained the residual functional capacity (RFC) for a range of relatively simple, low stress, unskilled work to be performed on second or third shifts and not involving public contact or more than minimal interaction with co-workers:

> In determining the claimant's residual functional capacity, attention has been given to his allegations and subjective complaints of pain and other allegedly disabling symptoms, according to the guidelines set forth in sections 404.1529/416.929 of the Regulations and Social Security Ruling 96-7p. The claimant's statements about pain and other symptoms will not alone establish disability. The Administrative Law Judge must consider all the claimant's symptoms, including pain, and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence, medical treatment history, information from other sources and the findings of State agency medical and psychological consultants about the existence of an individual's impairments. The undersigned considered the nature, location, onset, duration, frequency, radiation, and intensity of the claimant's pain and other symptoms. Consideration has also been given to the precipitating and aggravating factors, type of medication, dosage, effectiveness and side effects, as well as the type of treatment, and other matters relating to the claimant's condition.
>
> The claimant alleges an inability [to] work due to anxious and depressed mood. The claimant reports crying spells, obsessive tendencies, feeling overwhelmed, limited focus, limited motivation, difficulty dealing with stressful circumstances or with other people. The claimant indicates that on some days, his condition leaves him essentially immobile. David

Skop, the claimant's friend, reiterated some of the testimony concerning the claimant's activities and limitations. Mr. Skop stated that the claimant attempted to work on many occasions, but had been unable to maintain employment. Mr. Skop acknowledged that the claimant typically functioned better when he was on medication.

The undersigned considered whether the claimant's medically determinable impairments could reasonably be expected to cause the disabling symptomology alleged and concluded that they could. However, after careful consideration of the entire record, the undersigned finds that the claimant's testimony, with respect to the extent and severity of his impairment and the resulting functional limitations, to be somewhat overstated and inconsistent with the available evidence.

Specifically, no doctor imposed a work preclusive limitation on the claimant's functioning. For a good deal of the time after the alleged onset, the claimant did not engage in any physician-led, or other health care. Moreover, the record suggests that the claimant did not consistently follow prescribed treatment, including appropriate use of pharmacology agents. During the hearing, he reported taking no medications due to concern over potential adverse effects. Despite this, the evidence shows that the claimant's symptoms were reasonably well controlled when he was compliant.

The evidence in the case file does not fully support the claimant's contentions as to the frequency, duration and intensity of his symptoms. In spite of his anxiety/depression, clinicians typically observed the claimant demonstrate spontaneously expressed and well-organized thoughts, as well as coherent and relevant cognitive processing. The claimant was generally described as alert, correctly oriented, and without evidence of any psychotic thinking. The overall record does not suggest or establish that the claimant lacks suitable concentration, memory, adaptive or interpersonal skills for vocational involvement. The claimant is able to perform self-care tasks and other activities. The claimant prepares meals [and] washes dishes and laundry. In addition, the claimant vacuums, dusts and shops. Further, the claimant drives, cares for his pets, does some gardening, and occasionally visits family. Moreover, the claimant reads nonfiction, listens to music, [and] occasionally goes out to eat or to a movie. (Exhibits 9E, 1F, 2F and testimony).

The claimant's physical health is good. The record is devoid of evidence documenting any meaningful orthopedic, neurological or vascular disorder afflicting the claimant.

After considering all the pertinent factors, the Administrative Law Judge concludes that the claimant's impairments engender "mild" restrictions in activities of daily living (performs adaptive functions such as cooking, cleaning, shopping, caring appropriately for personal grooming and hygiene); "moderate" difficulties in maintaining social functioning (is uncomfortable around crowds and tends to isolate self, however, he communicates and interacts adequately with others, functions in social settings *e.g.*, store/restaurant clerks, has meaningful interpersonal relationships with family and a friend); and "mild to moderate"

>  deficiencies of concentration, persistence or pace in completing tasks in a timely manner (operates a motor vehicle, attends to personal finances, cognitive functions in terms of awareness, orientation, concentration, simple calculation and abstraction are essentially preserved).  There are "one or two" episodes of decompensation in a work or work-like setting.
>
> As such, the claimant would have difficulty consistently carrying out complex or detailed instructions; working under stressful circumstances in close proximity with others. Accordingly, the claimant has the residual functional capacity for a range of relatively simple, low stress, unskilled work that is performed on the 2nd or 3rd shifts, and does not involve public contact or more than minimal interaction with co-workers.

(A.R. 17-19).  The ALJ gave the following reasons for the weight given to the opinion of plaintiff's family physician, Robert A. Janke, M.D.:

> In reaching this conclusion, the undersigned notes that on one occasion, family physician Janke indicated that claimant had disabling anxiety (Exhibit 18E).  If, by this comment, the doctor [was] suggesting that the claimant could not perform any sustained work activity, such a view would be rejected.  Medical opinions on the ultimate question of disability are not binding on the Commissioner.  Moreover, where, as here, that opinion is not well supported objectively and is inconsistent with other substantial evidence in the case file, it is not accorded controlling weight under 20 CFR 404.15[2]7(d)(2), 416.927(d)(2) and Social Security Ruling 96-2p.  For the interval Dr. Janke saw the claimant, his progress notes demonstrated that the claimant's condition was reasonably stable.  The doctor's notations do not document any cognitive dysfunction, psychosis or decompensation.  The doctor ascribed no vocationally relevant limitation to the claimant.

(A.R. 19).

Plaintiff was 44 years old as of the date of the ALJ's decision.  Thus, plaintiff was classified a younger individual.  Plaintiff has a high school education.  The ALJ found that plaintiff did not have transferable work skills "and/or" that the transferability of work skills was not an issue in this case.  The ALJ then turned to the testimony of a vocational expert (VE).  In response to a hypothetical question regarding a person of plaintiff's age and with his RFC, education, and work experience, the VE testified that there were approximately 43,000 light assembler, laundry worker, night custodian and line attendant jobs within Michigan's lower peninsula that plaintiff was capable

of performing. (A.R. 361-62). The ALJ held that this constituted a significant number of jobs, and held that plaintiff was not disabled. (A.R. 14-21).

**1.**

Plaintiff argues that the ALJ "failed to consider the impact of plaintiff's stress upon plaintiff's ability to sustain employment as explained in SSR 85-15," and that the ALJ "failed to[] consider SSR 96-9p." (Statement of Errors, ¶¶ I, II). Upon review, the court finds that these arguments are meritless.

Plaintiff's first argument (Plaintiff's Brief at 11-12), consists of a partial quote of SSR 85-15. Plaintiff's brief is devoid of any developed argument applying SSR 85-15 to the facts of this case. Quoting an excerpt from a social security ruling is not a substitute for reasoned argument based on the facts in the administrative record and the applicable law. Because plaintiff's brief does not contain any developed argument corresponding this statement of error, the argument is deemed waived. Appellate courts generally find waiver under these circumstances. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 318 (6th Cir. 2005); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 462 (6th Cir. 2003); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("[I]ssues averted to in a perfunctory manner, unaccompanied by some effort at developed augmentation, are deemed waived."); *see also Caudill v. Hollan*, Nos. 04-6017, 04-6018, __ F.3d __, 2005 WL 3406479, at * 12 n.3 (6th Cir. Dec. 14, 2005); *Kennedy v. Commissioner*, 87 F. App'x 464, 466 (6th Cir. 2003).

Alternatively, ignoring the waiver, plaintiff's "argument" does not provide any basis on which to disturb the Commissioner's decision. SSR 85-15 concerns use of the Medical-Vocational Guidelines ("Grids") as a framework for evaluating solely non-exertional impairments.

*See Titles II & XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (reprinted at 1985 WL 56857 (S.S.A. 1985)). The ALJ indicated that the grids only provide a framework and that his decision had relied on vocational expert testimony. (A.R. 19-20). SSR 85-15 explains that the Medical-Vocational Guidelines ("grids") are organized based upon the limitations impairments impose on an individual's exertional capacities. "Where individuals also have nonexertional limitations of function or environmental restrictions, the table rules provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs within these exertional ranges that would be contraindicated by the additional limitations or restrictions." 1985 WL 56857, at * 1. "However, where a person has solely nonexertional impairment(s) the table rules do not direct conclusions of disabled or not disabled." *Id.* SSR 85-15 states that in cases of solely nonexertional impairments the grids are of limited utility as a framework for decision making because there is no medically determinable impairment limiting the individual's exertion. SSR 85-15 indicates that in order to determine how much the individual's occupational base (from sedentary through heavy or very heavy work) is reduced by the effects of nonexertional impairments, "in many cases, a decisionmaker will need to consult a vocational resource." 1985 WL 56857, at * 3. Here, in accordance with SSR 85-15, the ALJ relied on the testimony of a vocational expert.

Plaintiff also claimed that the ALJ "failed to[] consider SSR 96-9p." (docket # 7 at 1). The entirety of plaintiff's argument regarding SSR 96-9p is set forth below:

> Social Security Ruling 96-9p notes that when an individual suffers from a substantial inability to respond well to supervision, co-workers and typical work situations or to deal with changes in work routine, unskilled sedentary work base is eroded to the point that a finding of disability may be justified.

(Plaintiff's Brief at 12). This argument ignores plaintiff's lack of exertional limitations. SSR 96-9p's purpose is "To explain the Social Security Administration's policies regarding the impact of a residual functional capacity for less than a full range of sedentary work on an individual's ability to do other work." *Policy Interpretation Ruling Titles II & XVI: Determining Capability To Do Other Work – Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work*, SSR 96-9p (reprinted at 1996 WL 374185, at * 1 (S.S.A. July 2, 1996)). "An RFC for less than a full range of sedentary work reflects very serious limitations resulting from an individual's medical impairment(s) and is expected to be relatively rare." 1996 WL 374185, at * 1. Plaintiff's argument takes this Ruling's statements concerning mental impairments completely out of context, and ignores the Ruling's statements regarding use of vocational expert testimony. Plaintiff's argument does not provide any basis for disturbing the Commissioner's decision.

**2.**

Plaintiff argues that the hypothetical question posed to the vocational expert was inadequate because it failed to adequately address difficulties plaintiff has working or performing under stressful circumstances. (Plaintiff's Brief at 10-11). A VE's testimony in response to a hypothetical question accurately reflecting a claimant's impairments provides substantial evidence supporting the Commissioner's decision. *See Varley v. Secretary of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). A hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect the claimant's limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004). The ALJ found that plaintiff's subjective complaints were not fully credible. It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993);

*see also Chandler v. Commissioner*, 124 F. App'x 355, 358-59 (6th Cir. 2005); *Turcus v. Social Security Admin.*, 110 F. App'x 630, 632 (6th Cir. 2004). Plaintiff is correct that the ALJ failed to utilize the words "low stress" in the hypothetical question (A.R. 361), but the limitations the ALJ incorporated into the hypothetical regarding the type of work and his elimination of work in close proximity to others (unskilled work, no dealing with the public, minimal contact with co-workers and supervisors, and limited to second and third shift positions) adequately reflected plaintiff's impairments. *See Renfro v. Barnhart*, 30 F. App'x 431, 437 (6th Cir. 2002)(ALJ's failure to use the words "low stress" in the hypothetical was "irrelevant"). Plaintiff's argument does not provide any basis for disturbing the Commissioner's decision.

### **Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.


Dated:  January 20, 2006           /s/  Joseph G. Scoville
                                   United States Magistrate Judge